**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01891-STV

JANE DOE I AND JANE DOE II,

     Plaintiffs,

v.

9219-1568 QUEBEC, INC. A/K/A AYLO, F/K/A MINDGEEK,
D/B/A, "PORNHUB;" A FOREIGN ENTITY, MINDGEEK S.A.R.L.
A FOREIGN ENTITY; MINDGEEK USA INC., A DELAWARE
CORPORATION, ET AL.

     Defendants.

---

**DEFENDANT DISCOVER FINANCIAL SERVICES, INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(6), Defendant Discover Financial Services, Inc.[1] by and through undersigned counsel, respectfully moves to dismiss with prejudice the claims asserted against it in Plaintiffs' First Amended Complaint [ECF No. 12] ("FAC"). In support, Discover states as follows:

**STATEMENT OF CONFERRAL**

Discover's counsel, along with counsel for each of the other Defendants, conferred with Plaintiffs' counsel on June 10, 2026 regarding this Motion and the deficiencies in the FAC, which Discover contends cannot be cured by further amendment. The parties have been unable to resolve the issues raised during conferral. Plaintiffs oppose the relief requested herein.

---

[1] While Plaintiffs have named Discover Financial Services, Inc. as a defendant, Discover Financial Services merged into Capital One Financial Corporation on May 18, 2025 and no longer exists. The payment network referenced in the FAC is operated by DFS Services LLC, a wholly owned subsidiary of Capital One Financial Corporation. Accordingly, the proper defendant is DFS Services LLC. "Discover" herein means DFS Services LLC.

**INTRODUCTION**

In this case, the two Plaintiffs assert identical claims for violations of the Trafficking Victims Protection Reauthorization Act (commonly referred to as the "TVPRA"), 18 U.S.C. §§ 1591, 1595, against two distinct groups of Defendants.  In the first bucket are Defendants 9219-1568 Quebec, Inc., a/k/a Aylo, f/k/a MindGeek, d/b/a "Pornhub," and MindGeek USA Inc. (collectively, "Aylo/MindGeek" or the "Pornographic Content Defendants").[2] Aylo/MindGeek owns and operates various pornographic websites.  (FAC ¶¶ 18-24.) In late 2023, Aylo entered into a deferred prosecution agreement with the U.S. Attorney's Office for the Eastern District of New York related to a sex trafficking investigation.  (*See* FAC ¶ 79.)

In the second bucket are three major U.S. payment networks, Mastercard, Visa, and Discover (collectively, the "Network Defendants"[3]). While the allegations paint a disturbing account of how two women's lives were impacted by the actions of the Pornographic Content Defendants, Plaintiffs' attempt to now hold Discover—and the other payment networks—liable under the TVPRA is supported neither by the law nor the facts.

There are simply no allegations in the FAC that approach stating a claim against Discover. Plaintiffs only identify Discover by name in seven paragraphs of Plaintiffs' 503-paragraph FAC. Instead, the thrust of the FAC and the actions that allegedly caused Plaintiffs harm are those of the Pornographic Content Defendants, not the Network Defendants, and certainly not Discover.  (FAC ¶¶ 79-91, 188-237, 312-21, 335-93.) At best, the only basis Plaintiffs allege to hold Discover liable is that it and the other Network Defendants "permitted" consumers to use their payment networks

---

[2] Plaintiffs also sued a group of individuals, three of which were indicted for sex trafficking, and GirlsDoPorn, Inc. ("GDP"). (FAC ¶¶ 29-43.) The individuals and GDP have now been dismissed by Plaintiffs.

[3] Discover incorporates by reference dismissal arguments made by the Network Defendants as if fully stated herein.

through third parties to subscribe to PornHub Premium, thereby benefitting from pornographic subscriptions. (FAC ¶¶ 398, 400, 402.) Those sparse allegations are a far cry from pleading that Discover "knowingly benefited by making profits from [sexual abuse material] at [Plaintiffs'] expense." (FAC ¶¶ 486, 497.)[4] A recent case involving materially similar claims against Visa was dismissed. *See Fleites v. MindGeek S.A.R.L.,* 801 F.Supp.3d 1011 (C.D. Cal. 2025), attached here as **Exhibit A**. Much like Visa in *Fleites,* the disconnect between Discover and the acts allegedly committed against the Plaintiffs is dispositive.

There are at least four bases upon which the Court may grant this Motion to Dismiss. *First*, Plaintiffs have not demonstrated this Court has personal jurisdiction over Discover.

*Second*, Article III requires a concrete injury traceable to Discover. The FAC fails to allege any Discover-specific conduct connected to the at-issue videos and does not allege knowledge by Discover of content depicting Plaintiffs, much less content that involved sex trafficking. (FAC ¶¶ 79-325, 398-406.) Plaintiffs thus lack Article III standing to sue Discover.

*Third*, Plaintiffs lack statutory standing to assert claims against Discover for violations of the TVPRA. Courts must "presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). Where the alleged harm is "too remote" from the defendant's challenged conduct, as here, the proximate cause requirement bars the suit. *Id.* at 133. Plaintiffs allege no injury flowing directly from Discover's routine payment network conduct, and instead, the FAC attributes Plaintiffs' injuries to the independent acts of the GDP operators and

---

[4] The FAC demonstrates a fundamental misunderstanding of Discover's business. Discover operates a payment network that acts as an intermediary between issuers and merchants/acquirers to authorize and clear credit card transactions. Issuers, on one side of the transaction, are financial institutions that issue cards to customers, and on the other side of the transaction, are merchants and acquirers, which provide card acceptance services to merchants by settling transactions.

Aylo/MindGeek.

*Fourth*, Plaintiffs fail to state a TVPRA claim because the FAC does not plead any of the required elements against Discover. It does not plausibly allege that Discover knowingly received a benefit from Plaintiffs' alleged trafficking, participated in any trafficking venture, or knew or should have known of any venture involving Plaintiffs. The FAC alleges only routine payment-network services related to lawful subscriptions, several steps removed from the conduct that allegedly injured Plaintiffs. Such remote, attenuated allegations do not satisfy section 1595's proximate cause requirement or Fed. R. Civ. P. 8's plausibility standard.

For these reasons, the Court should dismiss all claims against Discover with prejudice.

## LEGAL STANDARD

Rule 12(b)(2) allows a defendant to challenge a court's exercise of personal jurisdiction over it. *Pilgrim's Pride Corp. v. Allegiant Electric, Inc.*, 717 F.Supp.3d 1036, 1043 (D. Colo. 2024). A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *See Translogic Corp. v. Pugliese*, No. 23-cv-01531-NYW-SBP, 2024 WL 1513498, at *2-3 (D. Colo. Apr. 8, 2024). To establish standing, a plaintiff must allege facts showing an injury caused by the defendant that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted).

Similarly, a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility in this context requires factual allegations that allow "the court to draw the reasonable inference that the defendant

4

is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Under *Twombly* and *Iqbal*, courts apply a two-step analysis. First, the court must exclude "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or conclusory. *Id.* at 679-80. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Parker v. Stryker Corp.*, 584 F.Supp.2d 1298, 1299 (D. Colo. 2008). Second, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. If the allegations in the complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## **ARGUMENT**

In addition to the lack of personal jurisdiction over Discover, each defect in Plaintiffs' claims against Discover stems from the same failure: the FAC does not allege Discover-specific conduct connecting Discover to Plaintiffs, their videos, GDP, Aylo's websites, or any trafficking venture. Instead, the FAC relies on generalized allegations against the Network Defendants and Pornographic Content Defendants collectively, which cannot establish standing, proximate cause, or any element of a TVPRA claim against Discover.

**A.      The Court Lacks Personal Jurisdiction Over Discover.**

In a federal question case in which a defendant challenges the court's personal jurisdiction over it, the court must: 1) determine whether the applicable federal statute potentially confers

jurisdiction by authorizing service of process on the defendant, and 2) determine whether the exercise of jurisdiction comports with due process. *F.C. v. Jacobs Solutions Inc.*, 790 F.Supp.3d 1158, 1174-75 (D. Colo. 2025) (citing *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). "Because the TVPRA does not provide for nationwide service of process, Fed. R. Civ. P. 4(k)(1)(A) commands the district court instead to apply the law of the state in which the district court sits." *Jacobs Sols. Inc.*, 790 F.Supp.3d at 1175 (cleaned up). That step also involves two inquiries: first, whether Colorado's long-arm statute sanctions the exercise of personal jurisdiction over the defendant, and second, whether the exercise of jurisdiction comports with the due process requirements of the Constitution. *Id.*

Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause," and the "first, statutory, inquiry effectively collapses into the second, constitutional analysis." *Id.* (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)). To satisfy the constitutional inquiry, a defendant must have sufficient minimum contacts "such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Id.* (citing *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020)). To make that determination, courts look to whether 1) "the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and 2) [whether] the plaintiff's alleged injuries 'arise out of or relate to those activities.' *Id.* (citing *XMission, L.C.*, 955 F.3d at 840).

Plaintiffs fail to allege Discover purposefully directed its activities at Colorado residents. Plaintiffs allege the Court has personal jurisdiction over Discover because it "create[s] a product that has sufficient minimum contacts in Colorado." (FAC ¶ 77.) Discover does not "create a

product" with sufficient minimum contacts in Colorado.  Discover[5] operates a payment network that acts as an intermediary between issuers and acquirers. As set out in the Declaration of Jennifer Cruz, attached as **Exhibit B**, Discover is a Delaware limited liability company with its principal place of business in Virginia. "[A]bsent an exceptional case, general jurisdiction for a corporation now lies only in 'its place of incorporation and principal place of business.'" *Jacobs Sols, Inc.*, 790 F.Supp.3d at 1179.  Plaintiffs make a bald allegation that Discover conducts "substantial business activities in Colorado." (FAC ¶ 76.)   However, Discover is not registered to do business in Colorado and has not appointed a registered agent for service of process in Colorado. Discover has no offices or facilities in Colorado, nor does it have a mailing address in Colorado. Discover has not purposefully directed its activities at Colorado residents.

Plaintiffs fail to allege their injuries arose from any purported Colorado-directed activities of Discover.  The only allegation having to do with the Plaintiffs and Colorado is that Plaintiff Jane Doe I resides in Colorado.  (FAC ¶¶ 1, 68.)  The drugging and videotaped sexual assaults of the Plaintiffs are alleged to have occurred in California or at locations where Aylo or GDP uploaded or permitted the at-issue videos to be viewed, which the FAC asserts would have been in California, Texas, or foreign nations.  (FAC ¶¶ 19, 24-27, 29-30, 106, 113-188, 195, 259-312.).  There is no tie between the acts that allegedly violated the TVPRA and any alleged contact Discover had with Colorado.  Discover is not "at home" in Colorado. Under the facts alleged in the FAC and the declaration of Jennifer Cruz, the Court lacks personal jurisdiction over Discover.

**B.    Plaintiffs Lack Article III Standing to Assert TVPRA Claims Against Discover.**

Plaintiffs lack Article III standing.  Article III standing requires a plaintiff to show, at a

---

[5]    As set forth in Exhibit B, Plaintiffs have sued a non-existent entity, Discover Financial Services. The proper defendant is DFS Services LLC.

minimum, "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At the pleading stage, the plaintiff bears the burden of establishing these elements and must "clearly . . . allege facts demonstrating" them. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The complained-of injury must be particularized, *i.e.*, it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. The injury must also be "fairly traceable to the challenged conduct of the defendant," and not the result of the independent action of some third party not before the court. *Spokeo*, 578 U.S. at 338; *see also Allen v. Wright*, 468 U.S. 737, 751 (1984) (injuries not fairly traceable where caused by third-party actors). Indeed, the Article III standing requirement means that Plaintiffs must allege a "line of causation" between Discover's actions and Plaintiffs' alleged harm that is more than "attenuated." *Allen*, 468 U.S. at 752.

Plaintiffs fail to allege a line of causation to Discover. Plaintiffs do not allege facts showing that Discover's actions caused their injuries or that Discover took any action, at all, directed at Plaintiffs. (FAC ¶¶ 79–325, 398, 400, 402.) *See Ctr. for Biological Diversity v. Berger*, 785 F.Supp.3d 894, 902 (D. Colo. 2025) (finding plaintiff's allegations conclusory and insufficient to establish Article III standing where the complaint "merely allege[d] the inference [the court] would need to reach…without actually offering the facts necessary to support that inference."). The FAC also does not allege that Discover knew of the existence of any content depicting Plaintiffs. Plaintiffs do not allege that Discover created, uploaded, hosted, tagged, promoted, reviewed, removed, refused to remove, or advertised any video depicting Plaintiffs. Nor do they allege that Discover communicated with any alleged trafficker, received any report concerning Plaintiffs, or

8

processed any transaction tied to content depicting Plaintiffs. Instead, Plaintiffs' alleged harms arise from GDP operators' alleged coercion and Aylo/MindGeek's hosting/distribution of videos. (FAC ¶¶ 79–91, 202-214, 315). Discover's alleged conduct, routine payment processing (FAC ¶¶ 53–55, 96, 398, 400), is far removed from the independent acts of third parties alleged in the FAC. *See Henderson v. Reventics, LLC*, No. 23-cv-00586-MEH, 2024 WL 5241386, at \*8 (D. Colo. Sept. 30, 2024) (concluding plaintiffs lacked Article III standing where they "failed to allege injuries in fact that are fairly traceable to the Defendants' complained of conduct.").

Article III requires a concrete causal nexus rather than the conjectural and speculative connections that Plaintiffs rely on. Plaintiffs seek to hold Discover liable because it allegedly processed payments for subscriptions to adult-content websites. Under Article III, that is simply too attenuated to show that Plaintiffs' injuries are traceable to Discover.

### C.    Plaintiffs Lack Statutory Standing.

*Second,* Plaintiffs also lack statutory standing under the TVPRA because their alleged injuries cannot be traced to Discover. Courts must "presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 132 (2014). This proximate cause requirement bars suits where the alleged harm is "too remote" from the defendant's challenged conduct. *Id*. at 133 (quoting *Holmes v. Sec. Inv. Prot. Corp*., 503 U.S. 258, 268-69 (1992)). To proceed, Plaintiffs must plausibly allege an "injury flowing directly from" Discover's conduct. *Lexmark*, 572 U.S. at 133-34. Instead, their allegations attribute injury to the independent acts of the GDP operators and Aylo/MindGeek. (*See generally*, FAC).

Indeed, the Supreme Court requires a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. General revenue from a third-party's business

does not satisfy this proximate cause requirement. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (allegation that Twitter services "facilitated the … growth and ability to plan and execute" a terrorist organization was insufficient to satisfy proximate causation). The FAC does not allege Discover processed transactions involving Plaintiffs' videos or any illegal content. The seven Discover-specific allegations are exceedingly thin. At most, the allegations describe Discover's purported indirect connection as a payment network to lawful consumer subscriptions multiple steps removed from Plaintiffs' alleged injuries. (FAC ¶¶ 96, 398, 400, 402.) *See Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928-29 (9th Cir. 1994) (proximate causation not satisfied where plaintiff's harm depended on the independent acts of tenant); *see also Holmes*, 503 U.S. at 271-72. Because Plaintiffs fail to allege a concrete injury traceable to Discover or any injury proximately caused by Discover's conduct, they lack Article III and statutory standing, and their claims against Discover must be dismissed with prejudice.

**D.      Plaintiffs Fail to State a Claim Under the TVPRA.**

Congress enacted the TVPRA to combat human trafficking, which it determined was increasingly perpetrated by organized criminal enterprises. *See* 22 U.S.C. § 7101(a), (b)(8). In doing so, Congress established a private right of action in 18 U.S.C. § 1595(a), which is the sole cause of action asserted in this case. To state a claim under § 1595(a), Plaintiffs must plead facts demonstrating that Discover "(1) 'knowingly benefit[ted] financially or by receiving anything of value' (2) from participation in a venture that defendant 'knew or should have known has engaged in' sex trafficking." *J.L. v. Best Western Int'l, Inc.*, 521 F.Supp.3d 1048, 1060 (D. Colo. 2021). Such a claim may proceed under theories of either direct or indirect liability.[6] *Id*. As is pertinent

---

[6] Indirect liability under § 1595 requires that a defendant's "acts, omissions, and state of mind" be imputed through an agent. *Id*. Because the FAC contains no allegations suggesting an agency relationship, Discover addresses only direct liability.

here, to establish direct liability, Plaintiffs must show that Discover's "own acts, omissions, and state of mind establish each element." *Id*. Even if Plaintiffs had standing—which they do not—the FAC independently fails to state a viable TVPRA claim against Discover.

### 1. Plaintiffs Fail to Plausibly Allege that Discover "Knowingly Benefited"

To satisfy the first element of their claim, Plaintiffs must allege Discover *knowingly* received a "financial benefit" from participation in the alleged sex trafficking venture. *See Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 642 (9th Cir. 2025) (internal citations omitted) ("One participates in a sex-trafficking venture by 'knowingly assisting, supporting, or facilitating a' prohibited sex-trafficking act…the defendant must '*knowingly* benefit from *knowingly* participating…'") (emphasis in original). General allegations that a business relationship exists are insufficient; "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp.3d 156, 169 (S.D.N.Y. 2019).

Plaintiffs contend Discover "profited" by allegedly processing payments for third parties for paid content on Aylo/MindGeek websites. (FAC ¶¶ 400, 402.) These allegations show Discover provided ordinary payment processing services in its capacity as a payment network. Nowhere does the FAC allege that Discover's network was even used to process any payments related to content depicting Plaintiffs, or that access to content depicting Plaintiffs required a premium subscription that would involve payments. And even if the FAC did so, that would not establish that Discover knew or should have known about the content depicting Plaintiffs that was allegedly derived from sex trafficking. Discover provides a payment network for merchants and acquirers to process payments made by consumers who are issued cards by various financial institutions. Providing routine payment network services for facially lawful transactions does not come close

11

to "knowingly benefiting" from a trafficking venture under § 1595. Under § 1595, a financial institution that processes payments through standard, industry-wide infrastructure does not "knowingly benefit" simply because a downstream platform may have hosted unlawful content. The Ninth Circuit, applying analogous liability standards in the copyright context reached the same conclusion: merely providing a payment network for a website does not establish that the card network had knowledge of specific unlawful transactions. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th Cir. 2007). Plaintiffs fail to plausibly allege that Discover knowingly received a financial benefit from participation in a sex trafficking venture, and their § 1595 claim fails as a matter of law.

### 2. Plaintiffs Do Not Plausibly Allege Discover's Participation in a Trafficking Venture

Just as Plaintiffs do not allege a "knowing benefit", they do not adequately allege Discover's participation in a trafficking venture. Providing ordinary payment processing services is not participation in a trafficking venture. Beneficiary liability under § 1595 requires more than providing routine, arm's-length services and instead demands "affirmative and culpable" conduct, not passive nonfeasance. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 500-07 (2023) (no liability absent affirmative alignment with the unlawful aims); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) (participation requires a shared unlawful purpose).

The Central District of California applied these principles in dismissing claims against a payment network where the allegations showed only neutral payment processing and no "meeting of the minds." Ex. A, *Fleites*, 801 F.Supp.3d 1011, 1040 (C.D. Cal. 2025). In *Fleites*, the court dismissed the TVPRA civil conspiracy and beneficiary liability claims against Visa because the plaintiff failed to plead a shared purpose, mutual agreement, or specific intent to advance

trafficking-related conduct.[7] The *Fleites* court held that despite the plaintiff's allegations Visa possessed generalized awareness of systemic illicit content, the relationship constituted a passive commercial relationship rather than a coordinated trafficking venture. *Id.* at 1038. The court emphasized that Visa did not tailor its payment services to promote illegal content, coordinate operations with the platform, or provide personalized support. *Id.* at 1027. Consequently, routine payment processing—even if allegedly financially significant or purportedly providing operational leverage to the underlying platform—fails as a matter of law to establish the purposeful alignment required to show participation or a conspiracy[8] under the TVPRA.

*Fleites* is especially instructive. The plaintiff in *Fleites* alleged Visa conducted due diligence, received anti-trafficking advocacy letters, knew PayPal had terminated its relationship with MindGeek, and continued processing payments until late 2020. *Id.* at 1023. Even with those allegations, the court held the plaintiff had not plausibly alleged agreement, shared unlawful purpose, or intentional participation in trafficking. The FAC here alleges far less against Discover. It does not plead Discover-specific due diligence, Discover-specific notice, or Discover-specific communications concerning Plaintiffs, any video depicting Plaintiffs, or a sex trafficking venture.

Courts in this District have required more than a passive commercial relationship to establish 'participation' in a venture under § 1595. In *J. L. v. Best Western*, Judge Brimmer held

---

[7] In *Fleites*, the plaintiffs alleged that "Visa was aware of troubling conduct by MindGeek," but failed to allege facts "showing that Visa affirmatively sought to further that conduct or shared MindGeek's unlawful goals." *Id.* at 1040.  The court concluded that the complaint alleged only "passive inaction, not purposeful participation. That is not enough to establish the specific intent required." *Id.*

[8] The FAC does not contain a separate civil conspiracy claim against Discover. Should Plaintiffs attempt to make such an argument, it would fail for the same reasons the *Fleites* court rejected that claim against Visa. Conspiracy under § 1595 requires actual knowledge of the venture's unlawful aims, a "meeting of the minds in an unlawful arrangement," and intent to further the venture's unlawful objective. The FAC makes no such allegations regarding Discover, nor could it plausibly do so.

that a hotel franchisor's general knowledge of trafficking conditions at franchisee properties was insufficient to constitute participation. 521 F.Supp.3d at 1063–64.

Discover's connection to Plaintiffs' alleged harm is even more attenuated than the hotel franchisor in *Best Western*. The FAC alleges only that Discover provided payment processing services for third parties. (FAC ¶¶ 53-55.) In other words, Discover's business is to operate a payment network that connects credit card issuers and acquirers.  These allegations show ordinary, industry-standard payment processing, not active involvement in trafficking.  The FAC contains no facts suggesting Discover managed, operated, or exercised any control over the alleged trafficking venture. As Plaintiffs allege only Discover's provision of routine, arm's-length payment services, the FAC fails to establish the participation necessary for liability under § 1595.

### 3. Plaintiffs Fail to Allege Discover's Actual or Constructive Knowledge

Setting aside the participation and benefit elements that Plaintiffs do not plead, Plaintiffs' claims fail independently because the FAC contains no factual allegations that Discover knew or should have known that Plaintiffs were trafficked. Plaintiffs' claims against Discover rest on unsupported speculation rather than facts. General knowledge that trafficking exists on the internet does not establish that a defendant "knew or should have known" the venture was engaged in trafficking, as § 1595(a) requires. As the Ninth Circuit has explained, "[s]weeping generalities" describing problems in an "industry are too attenuated to support an inference that [a defendant] knew or should have known of the specifically alleged TVPRA violations." *Ratha v. Phatthana Seafood Co.*, 26 F.4th 1029, 1046 (9th Cir. 2022).

The FAC does not allege that Discover received complaints, reports, or notices regarding Plaintiffs' videos or Aylo/MindGeek or GDP content featuring sex trafficking. Absent such allegations, Plaintiffs cannot plausibly establish that Discover had actual or constructive

14

knowledge of the alleged trafficking venture as required under § 1595. *See Best Western*, 521 F.Supp.3d at 1064 (notice of "the prevalence of sex trafficking generally" at defendant's hotels was insufficient to show that defendant "should have known about what happened to this plaintiff"); *Doe 1 v. Red Roof Inns, Inc*., No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (allegations that customers complained of prostitution on defendant's properties were "insufficient to meet a known or should have known standard" under Section 1595(a)). Moreover, the FAC is devoid of allegations that Discover had the knowledge or constructive knowledge of a specific venture to engage in TVPRA violations. *See, e.g., J.C. v. Choice Hotels Int'l, Inc*., No 20-CV-00155, 2020 WL 6318707, at *6 (N.D. Cal. Oct. 28, 2020) ("general allegations about sex trafficking problems throughout the hospitality industry is not enough to put them on notice about the sex trafficking of this plaintiff"); *A.B. v. Hilton Worldwide Holdings Inc*., 484 F.Supp.3d 921, 939 (D. Or. 2020) ("Plaintiff must allege facts showing how [defendants] received notice that Plaintiff A.B. was trafficked at their respective properties.").

Expanding secondary liability to neutral payment networks would "run roughshod over the typical limits on tort liability," exposing, "any sort of…provider" to suit "merely for knowing" wrongdoers used their services and failing to stop them – allegations that go beyond those in this case. *Taamneh*, 598 U.S. at 503. The Ninth Circuit likewise refused to impose vicarious liability on card networks for the conduct of online actors because "credit cards serve as the primary engine of electronic commerce," and payment networks do not control the underlying wrongdoing. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794, 804-06 (9th Cir. 2007). The *Fleites* court recently applied these same principles to dismiss, *with prejudice*, TVPRA claims against

15

Visa. *See generally*, Ex. A, *Fleites*, 801 F.Supp.3d at 1038-39, 1045.[9] Absent factual allegations that Discover knew or should have known of Plaintiffs' alleged trafficking or of a specific venture involving them, Plaintiffs cannot satisfy the knowledge requirement of § 1595.

## **CONCLUSION**

The FAC alleges horrific conduct by others, but even if personal or subject matter jurisdiction were established, it does not plead facts making Discover legally responsible for that conduct under the TVPRA. For the foregoing reasons, Discover respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' First Amended Complaint in its entirety and with prejudice.

Dated this 12th day of June, 2026.

/s/ Gina L. Tincher
Stacy A. Carpenter
Gina L. Tincher
**GREENBERG TRAURIG, LLP**
1144 15th Street, Suite 3300
Denver, CO 80202
Telephone: 303-572-6500
Stacy.carpenter@gtlaw.com
Gina.tincher@gtlaw.com

Marcella C. Ducca – *request for general admission forthcoming*
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road, Suite 2500
Atlanta, GA 30305
Telephone: 678-553-7375
duccam@gtlaw.com

*Counsel for Defendant Discover Financial Services, Inc.*

---

[9] As Visa successfully argued in *Fleites,* if passive nonfeasance and general awareness were enough for a TVPRA claim, then virtually any vendor with commercial ties to MindGeek could face liability, including for example, a power company knowingly supplying electricity to MindGeek.  The *Fleites* court rejected that possibility, as the Court should here.  *Id.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed DEFENDANT DISCOVER FINANCIAL SERVICES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT using the CM/ECF system, which will send notice to the following counsel of record:

Wadi Muhaisen
Scott C. Hammersley
**Muhaisen & Muhaisen, LLC**
1225 17th Street, Suite 2520
Denver, Colorado 80202
wadi@muhaisenlaw.com
scott@muhaisenlaw.com
*Counsel for Plaintiffs*

LisaMarie Frances Collins
Kerime Sule Akoglu
**Mintz Levin Cohn Ferris Glovsky & Popeo PC**
919 Third Avenue
New York, New York 10022
KSAkoglu@mintz.com
Lcollins@mintz.com
*Counsel for Defendants 9219-1568 Quebec, Inc. a foreign entity also known as Aylo formerly known as MindGeek doing business as Pornhub, MindGeek S.A.R.L, MindGeek U.S.A. Inc.*

Ellie Lockwood
**Snell & Wilmer LLP**
675 15th Street, Suite 2500
Denver, Colorado 80202
elockwood@swlaw.com
*Counsel for Defendants 9219-1568 Quebec, Inc. a foreign entity also known as Aylo formerly known as MindGeek doing business as Pornhub, MindGeek S.A.R.L, MindGeek U.S.A. Inc.*

Linda J. Knight
**Spencer Fane LLP**
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
lknight@spencerfane.com
*Counsel for Defendant Mastercard International, Inc.*

17

Martin S. Hyman
Matthew C. Daly
**Spencer Fane LLP**
711 Third Avenue, 17th Floor
New York, New York 10017
mhyman@spencerfane.com
mdaly@spencerfane.com
*Counsel for Defendant Mastercard International, Inc.*

Andrew Tulumello
Joshua M. Wesneski
**Weil, Gotshal & Manges LLP**
2001 M Street NW, Suite 600
Washington, D.C. 20036
drew.tulumello@weil.com
joshua.wesneski@weil.com
*Counsel for Defendant Visa, Inc.*

Nicole J. Comparato
**Weil, Gotshal & Manges LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
nicole.comparato@weil.com
*Counsel for Defendant Visa, Inc.*

Jacob A. Rey
Kathryn A. Reilly
Melissa Lawson Romero
**Wheeler Trigg O'Donnell LLP**
370 17th Street, Suite 4500
Denver, Colorado 80202-5647
rey@wtotrial.com
reilly@wtotrial.com
romero@wtotrial.com
*Counsel for Defendant Visa, Inc.*

 */s/ Gina L. Tincher*
Gina L. Tincher, Esq.

18