**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-01891-STV

JANE DOE I; and JANE DOE II,

Plaintiffs,

v.

9219-1568 QUEBEC, INC.;
MINDGEEK S.A.R.L.;
MINDGEEK U.S.A. INC.;
MASTERCARD INTERNATIONAL, INC.;
VISA, INC.; and
DISCOVER FINANCIAL SERVICES, INC.,

Defendants.

---

**ORDER**

---

Entered by Chief Magistrate Judge Scott T. Varholak

This matter is before the Court on Motion of Defendant Mastercard International Incorporated to Dismiss the First Amended Complaint [#65]; Motion to Dismiss of Defendants 9219-1568 Quebec, Inc.; MindGeek S.á r.l.; MindGeek USA Inc. [#67]; Visa Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) [#70]; and Defendant Discover Financial Services, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint [#71] (collectively, the "Motions"). The Motions are before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of final judgment. [##59, 61] This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that neither oral argument nor

an evidentiary hearing would materially assist in the disposition of the Motions. For the following reasons, the Motions are **GRANTED**.

## I. FACTUAL BACKGROUND[1]

This case arises from Plaintiffs' harm as victims of a sex trafficking operation.[2] Plaintiff Jane Doe I is a resident of Colorado. [#12 at ¶ 1] In 2014, Plaintiff Jane Doe I was contacted by alleged adult film producer Ruben Andre Garcia about a modeling opportunity in California. [*Id.* at ¶¶ 32, 98, 105-07] Garcia worked for the now-defunct GirlsDoPorn ("GDP") pornographic content company. [*Id.* at ¶¶ 29, 32] Doe I accepted Garcia's invite to participate in a photo shoot and flew to California. [*Id.* at ¶¶ 113-117]

Upon meeting Garcia and being taken to his alleged residence, Doe I was told that the "photo shoot" was a pornographic video shoot. [*Id.* at ¶¶ 119, 125-131] Garcia pressured Doe I into participating in the "photo shoot" and told her that the video footage would not be published anywhere. [*Id.* at ¶ 143] During the "photo shoot," she was sexually assaulted by Garcia. [*Id.* at ¶¶ 161-163] Garcia then informed Doe I that she would have to participate in a "solo shoot" before she could return to Colorado. [*Id.* at ¶ 171] Doe I participated in the "solo shoot" and was assaulted again. [*Id.* at ¶¶ 176-81]

Approximately one year after the "photo shoot," Doe I discovered that one of the videos that captured her being sexually assaulted was uploaded to the GDP website. [*Id.* at ¶ 202-03] Doe I found this video on multiple websites, including Pornhub. [*Id.* at ¶ 205]

---

[1] The facts are drawn from the allegations in Plaintiffs' First Amended Complaint (the "Complaint") [#12], which for purposes of Defendants' Rule 12(b)(2) challenge, the Court accepts as true to the extent they are uncontroverted by Defendants' affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[2] The alleged perpetrators of the trafficking operation were criminally prosecuted and pled guilty to sex trafficking and conspiracy to commit sex trafficking in violation of 18 U.S.C. §§ 1591(a) and 1594(c). [#12 at ¶¶ 33, 37, 41]

Doe I contacted Pornhub, YouPorn, and other websites requesting that the video be removed, but these platforms did not take down the video. [*Id.* at ¶¶ 207, 210] Doe I received emails from GDP and Pornhub telling her that she had signed a contract and they would not remove the video. [*Id.* at ¶ 212]

Plaintiff Jane Doe II is a resident of Ohio. [*Id.* at ¶ 5] Jane Doe II experienced a similar sequence of events to that described above. She responded to an online advertisement for what she believed to be a modeling job. [*Id.* at ¶¶ 244-46] Upon speaking to a man who identified himself as "Jonathan,"[3] Doe II learned that the modeling job would include nudity and pornography. [*Id.* at ¶ 250] Jonathan told her that any photo shoot content would be on DVD, not posted on the internet, and available only to people in other countries, specifically, Australia and New Zealand. [*Id.* at ¶¶ 251-53] Doe II flew from her residence in Florida to California to participate in the photo shoot. [*Id.* at ¶ 259, 265] During the photo shoot, Doe II was sexually assaulted by Garcia. [*Id.* at ¶¶ 298-304] Approximately one month after the "photo shoot," Doe II discovered that the video of her sexual assault was posted on the internet. [*Id.* at ¶¶ 314-16]

According to the Complaint, Defendant 9219-1568 Quebec, Inc. ("9219"), formerly known as MindGeek and presently known as Aylo, is the parent company of pornographic websites including Pornhub, YouPorn, Brazzers, and others. [*Id.* at ¶¶ 18, 20-22] Defendant 9219 has locations in Texas, Romania, the United Kingdom, Luxembourg, Canada, and Cyprus. [*Id.* at ¶ 19] The Complaint alleges that Defendant 9219 "benefits from and is, in effect, Pornhub, YouPorn, Tube8, and its other Pornhub affiliated

---

[3] According to the Complaint, "Jonathan" was Michael Pratt, a film producer and owner of GDP. [#12 at ¶ 40]

pornographic websites." [*Id.* at ¶ 23] Defendant MindGeek USA, Inc. is a corporate subsidiary of Defendant 9219 and is incorporated in Delaware with its principal place of business in California. [*Id.* at ¶ 24-25] Defendant MindGeek S.á r.l. is a corporation located in Luxembourg. [*Id.* at ¶ 26] According to a deferred prosecution agreement between the United States Attorney's Office for the Eastern District of New York and a group of the MindGeek and Aylo entities, these Defendants and others in their corporate umbrella operated and hosted GDP content on their free websites. [*Id.* at 13][4] As a result, they received over $100,000 in payments from GDP operators and over $700,000 in advertising revenue attributable to GDP and related content. [*Id.*]

Defendants Mastercard International, Inc. ("Mastercard"), Visa, Inc. ("Visa"), and Discover Financial Services, Inc. ("Discover") are global credit card companies. [*Id.* at ¶¶ 47, 50, 53] Visa is headquartered in California. [*Id.* at ¶ 51] Mastercard is incorporated in Delaware, and its principal place of business is in New York. [*Id.* at ¶ 47-48] Discover is headquartered in Illinois. [*Id.* at ¶ 54] According to the Complaint, although Pornhub no longer accepts credit cards, Defendants Visa, Mastercard, and Discover previously permitted credit card transactions to pay for Pornhub Premium. [*Id.* at ¶¶ 396-98, 400] Pornhub Premium permitted user access to GDP videos. [*Id.* at ¶ 401]

Plaintiffs initiated this action on June 16, 2025. [#1] The operative Complaint asserts two claims by Plaintiffs against all Defendants under Sections 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595. [#12 at ¶¶ 482-503] On June 12, 2026, all Defendants filed Motions to Dismiss,

---

[4] For consistency and clarity, the Court refers to the actual page number of the .pdf document uploaded to the Electronic Court Filing system, rather than to the numbering printed on each page.

arguing that this Court lacks personal jurisdiction over them and that Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). [##65, 67, 70, 71] Defendants Mastercard, Visa, and Discover also argue that Plaintiffs lack Article III standing and MindGeek S.á r.l. and 9219 argue that they are beyond the territorial scope of TVPRA Section 1595. [*Id.*] Plaintiffs have responded to the Motions to Dismiss [##79, 80] and Defendants have replied [##81, 82, 83, 85].

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss alleged claims against them for lack of personal jurisdiction. "Where the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction. Facts regarding jurisdictional questions may be determined by reference to affidavits, by a pretrial evidentiary hearing, or at trial." *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 22-2435-DDC-TJJ, 2024 WL 3511274, at *5 (D. Kan. July 23, 2024) (quoting *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (internal quotation marks, citations, and ellipses omitted)). "[D]ue process does not require an oral hearing, and a district court has discretion to decide a motion to dismiss without one." *Id.* (quoting *Frischenmeyer v. Werholtz*, 459 F. App'x 759, 761 (10th Cir. 2012)). "Nor does Fed. R. Civ. P. 12(i) mandate an oral (evidentiary) hearing. Rule 12(i) provides that, if a party moves, it 'must be heard' on a Rule 12(b)(1)–(7) defense or Rule 12(c) motion 'unless the court orders a deferral until trial.'" *Id.* (quoting

Fed. R. Civ. P. 12(i)). "But '[b]eing "heard" does not equate to an evidentiary hearing or oral hearing on [the] motion.'" *Id.* (quoting *Tracy v. Weber Cnty.*, No. 1:23-cv-90, 2023 WL 6916713, at *1 (D. Utah Oct. 19, 2023)); *see also Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998) ("Every circuit to consider the issue has determined that the 'hearing' requirements of Rule 12 and Rule 56 do not mean that an oral hearing is necessary, but only require that a party be given the opportunity to present its views to the court.")).

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc.*, 514 F.3d. at 1056-57. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The Court also accepts the well-pleaded facts in the complaint "as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (quotation omitted). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (quotation omitted). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation omitted).

## III. ANALYSIS

All Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [##65, 67, 70, 71] The Court begins by setting forth the applicable legal framework and then considers whether it has personal jurisdiction over each Defendant.

In determining whether a federal court has personal jurisdiction over a nonresident defendant in a federal question case, the court must determine first, “whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant,” and second, “whether the exercise of jurisdiction comports with due process.” *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotations omitted). “A plaintiff bringing a civil action under 18 U.S.C. § 1595 may bring that action ‘in an appropriate district court of the United States.’” *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1174 (D. Colo. 2025) (quoting 18. U.S.C. § 1595(a)). Courts have concluded that “the TVPRA does not provide for nationwide service of process.” *Id.* at 1175 (quoting *Taylor v. Salvation Army Nat’l Corp.*, No. 21-cv-6105, 2022 WL 22861527, at *4 (N.D. Ill. Sept. 19, 2022)). Thus, under Federal Rule of Civil Procedure 4(k)(1)(A), the laws of the forum state, Colorado, dictates personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (Federal Rule of Civil Procedure 4(k)(1)(A) “commands the district court . . . to apply the law of the state in which the district court sits.”).

“A plaintiff seeking to invoke a Colorado court’s jurisdiction over a non-resident defendant must comply with the requirements of [Colorado’s] long-arm statute and constitutional due process.” *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1074-

75 (D. Colo. 2012) (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). Because "Colorado's long-arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070. "Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with "fair play and substantial justice."'" *Old Republic Ins. Co. v. Cont'l Motors*, Inc., 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

"Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Id*. "If a defendant is subject to specific personal jurisdiction, the asserted cause(s) of action must arise from the specific contacts with the forum that gave rise to jurisdiction; whereas, if a defendant is subject to general personal jurisdiction, the asserted cause(s) of action may be unrelated to the defendant's contacts with the forum." *Carnrick v. Riekes Container Corp.*, No. 15-cv-01899-CMA-KMT, 2016 WL 740998, at *2 (D. Colo. Feb. 24, 2016). Here, Plaintiffs do not assert general jurisdiction in Colorado over any Defendants. [##79 at 4; 80 at 4]. The analysis therefore focuses on specific personal jurisdiction.

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co.*, 877 F.3d

at 904 (quoting *Burger King*, 471 U.S. at 476-77). "[T]he 'minimum contacts' test for specific jurisdiction encompasses two distinct requirements: first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quotation omitted). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

This district has previously construed a TVPRA Section 1595 civil damages claim as "essentially a tort action" for purposes of personal jurisdiction. *Jacobs Sols. Inc.*, 790 F. Supp. 3d at 1176 (quotation omitted). In determining specific personal jurisdiction for tort-based actions, courts apply a "purposeful direction" test. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). Under that test, the court may exercise personal jurisdiction over a non-resident defendant where there is evidence of: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.*; *see also Ullom v. Drs. Collection Serv., Inc.*, No. 17-cv-0740-WJM-STV, 2018 WL 619755, at *3 (D. Colo. Jan. 30, 2018) ("A plaintiff must establish not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." (quotation and emphasis omitted)). The focus of this analysis is on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quotation omitted). As the Supreme Court has explained:

> [M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden v. Fiore*, 571 U.S. 277, 290 (2014). Thus, for Plaintiffs to successfully show that Defendants' alleged tortious conduct creates specific personal jurisdiction, Plaintiffs must show that Defendants purposefully directed their conduct toward Colorado.

The Complaint alleges that this Court has specific personal jurisdiction over Defendants because "all Defendants create a product that has sufficient minimum contacts in Colorado." [#12 at ¶ 77] The Complaint also alleges that a "significant portion" of Plaintiffs' injuries occurred in Colorado. [*Id.* at ¶ 69, 71] In their Responses to the Motions to Dismiss, Plaintiffs elaborate further why this Court has personal jurisdiction over Defendants. [*See* ##79, 80] These arguments are considered below.

**A. MindGeek S.à r.l. and 9219-1568 Quebec, Inc.**

In their Response, Plaintiffs assert that Federal Rule of Civil Procedure 4(k)(2) establishes jurisdiction over Defendants MindGeek S.à r.l. and 9219. [#79 at 4] Federal Rule of Civil Procedure 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

"This Rule 'serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process.'" *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360 (D. Colo. 2014) (quoting *Synthes (U.S.A.) v.*

*G.M. Dos Reis Jr. Ind. Com De Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009)), *aff'd Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799 (10th Cir. 2016). "When a defendant contends that he cannot be sued in the forum [state] and refuses to identify any other [forum state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2), so long as the exercise of federal jurisdiction satisfies Fifth Amendment due process standards." *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1208-09 (10th Cir. 2020) (quotation omitted).

Here, Plaintiffs' claims arise under federal law because they are statutory claims under the TVPRA. Defendants MindGeek S.á r.l. and 9219 contend they are not subject to personal jurisdiction in Colorado and have not identified another state where they are subject to jurisdiction. [##67 at 12-13, 14; 85 at 6-8] The Court therefore analyzes whether the exercise of federal jurisdiction satisfies due process.

"The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Joyspring Holdings, LLC v. Cosy Trading Co., Ltd.*, No. 2:25-cv-00298-DBB-DBP, 2025 WL 3033879, at *2 (D. Utah Oct. 30, 2025) (quoting *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,* 485 F.3d 450, 462 (9th Cir. 2007)). Because Plaintiffs do not assert general jurisdiction, the Court evaluates whether Defendants MindGeek S.á r.l. and 9219 "purposely directed" their activities at the United States and Plaintiffs' "injuries arose from the defendant's forum-related activities." *CGC Holding Company*, 974 F.3d at 1209 (citing *Dudnikov*, 514 F.3d at 1071).

Plaintiffs state that the successor entity to MindGeek S.à r.l., Aylo Holdings, entered a deferred prosecution agreement ("DPA") in which it admitted responsibility under United States law for certain acts. [#79 at 4] According to Plaintiffs, the conduct that Aylo Holdings admitted to in the DPA constitutes "substantial suit-related United States contacts." [*Id.*] This conduct includes the maintenance and operation of Pornhub, including through United States offices and employees, the hosting of GDP content accessed by United States users, and the knowing receipt of payments from GDP and advertisers attributable to GDP content. [*Id.* at 4-5]

As Defendants point out, however, the DPA—or at least the portions inserted into the Complaint—does not clearly identify which corporate entities operated in the United States for purposes of establishing personal jurisdiction. [#85 at 6-7] The incorporated "Statement of Facts" of the DPA states that the agreement is between the United States and "the defendant Aylo Holdings S.À.R.L., formerly known as 'MindGeek S.à r.l.' (together with its wholly-owned subsidiaries and affiliated entities, 'MindGeek' or the 'Company')." [#12 at 11] The DPA describes "MindGeek" as:

> [A] global, privately held group of entities (including MindGeek USA, Inc., MG Freesites Ltd. and MindGeek S.à r.l.), the business of which included the maintenance and operation of websites that enabled third parties to post and distribute adult videos. MindGeek owned and operated numerous pornographic websites and brands including Pornhub.com.

[*Id.*] The DPA further states that MindGeek S.à r.l. was a foreign entity organized and existing under the laws of Luxembourg and "the ultimate corporate parent company" for MindGeek USA, Inc. and MG Freesites Ltd. [*Id.*] "Although its corporate headquarters was in Luxembourg, MindGeek also had offices with employees in Montreal, Canada, and, among other places, Los Angeles, California." [*Id.*] The rest of the DPA inserted in

the Complaint attributes conduct to "MindGeek." [*Id.* at 11-18] And the allegations in Plaintiffs' Complaint and Response do not specify conduct attributable to MindGeek S.à r.l., but the "MindGeek" and "Aylo" entities generally. [*See generally* ##12, 79]

Defendants argue that this Court lacks specific personal jurisdiction over MindGeek S.à r.l. because it is a holding company with no employees or operations and because Plaintiffs failed to identify any conduct by MindGeek S.à r.l. directed at the United States. [#67 at 12-13, #85 at 6-7] Defendants' Declaration of Andreas Alkiviades Andreou[5] (the "Andreou Declaration") states that the successor entity to MindGeek S.à r.l., Aylo S.à r.l., "has always been a holding company," "has never exercised any control over the day-to-day decisions of the Aylo Defendants," "has never had any employees or operations of its own anywhere," and "has not operated, managed, maintained, supervised, or controlled the day-to-day operations of Pornhub.com or any other Aylo website." [#67-1 at ¶¶ 5-6]

Considering these arguments, Plaintiffs have not met their burden of establishing personal jurisdiction over Defendant MindGeek S.à r.l. Plaintiffs do not allege sufficient facts that MindGeek S.à r.l. purposely directed activities at the United States that relate to the alleged injury under the TVPRA. The DPA demonstrates that the MindGeek/Aylo group of entities admitted to conduct in the United States that relates to Plaintiffs' claims, though this conduct is not clearly attributed to the MindGeek S.à r.l. entity. Other courts deciding TVPRA claims have found similarly. *Jane Doe Nos. 60 through 121 v. Aylo Holdings S.A.R.L.*, No. 23-cv-1821-WQH-KSC, 2026 WL 2910891, at *9-11 (S.D. Cal.

---

[5] Mr. Andreou is the Director of Corporate Finance for Aylo Group Ltd and has served as a Class A manager for Aylo Holdings S.à r.l. since 2016. [#67-1 at ¶ 1]

Sept. 28, 2026) (finding lack of personal jurisdiction over MindGeek S.à r.l.); *Doe v. Aylo Glob. Ent. Inc.*, No. CV 23-07488-MWF (AGRx), 2024 WL 4599539, at *10 (C.D. Cal. June 24, 2024) (finding lack of personal jurisdiction over MindGeek S.à r.l. under Rule 4(k)(2)). Further, Plaintiffs do not argue that conduct attributable to other entities in the MindGeek/Aylo corporate group can be imputed to MindGeek S.à r.l. for jurisdictional purposes. *See, e.g.*, *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1089-94 (C.D. Cal. 2025) (finding lack of personal jurisdiction over MindGeek S.à r.l. in a TVPRA claim because conduct of its United States subsidiaries could not be imputed under an alter ego theory). Accordingly, the Court will not engage in such an analysis. Therefore, the Court finds that it does not have personal jurisdiction over MindGeek S.à r.l.

The analysis for Defendant 9219 is similar. According to the Andreou Declaration, 9219 is organized under the laws of Canada and the services it provides are performed in Canada. [#67-1 at ¶ 8] Defendant 9219 does not, and did not during the relevant period, have any offices or employees based in the United States. [*Id.* at ¶ 9] Its two previous employees based in the United States worked exclusively on paid-content websites, not Pornhub. [*Id.*]

Plaintiffs do not challenge these assertions but rather request jurisdictional discovery because the Andreou Declaration states that 9219 "provided programming, customer support, and management services to Aylo companies under intercompany agreements without identifying the recipients or suit-related functions."[6] [#79 at 5] Even

[6] The request for jurisdictional discovery, made in response to a motion, is procedurally improper. D.C.Colo.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). On this basis alone the Court could deny the request for jurisdictional discovery.

assuming some of these services were provided to entities based in the United States, Plaintiffs fail to allege any facts that the support or services performed by Defendant 9219 relates at all to Plaintiffs' TVPRA injury or GDP. And to "obtain jurisdictional discovery, a plaintiff 'must present a sufficient factual predicate for the establishment of personal jurisdiction.'" *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 671 n.1 (D. Colo. 2019) (quoting *St. Paul Travelers Cas. & Sur. Co. of Am. v. Guaranty Bank and Trust Co.*, No. 05-cv-00968-REB-BNB, 2006 WL 1897173, at *4 (D. Colo. July 10, 2006). The Court finds that Plaintiffs have not done so.

Accordingly, the Court does not have specific personal jurisdiction over Defendant 9219.

**B. MindGeek USA, Inc.**

The parties agree that MindGeek USA, Inc. ("MindGeek USA") is not subject to general jurisdiction in Colorado.[7] [#79 at 4] Thus, the Court evaluates whether Defendant MindGeek USA purposefully directed its conduct at Colorado with knowledge that "the brunt of the injury" would be felt in Colorado. *Niemi v. Lasshofer*, 770 F.3d at 1348. In the Complaint, MindGeek USA is included as one of the defendants in the DPA. [#12 at 11] However, the Complaint does not specify any activities by MindGeek USA specifically directed at Colorado. And the Complaint's assertion that "Defendants systemically

[7] The Parties do not dispute that MindGeek USA is incorporated in Delaware. [##12 at ¶ 25; 67 at 13] Plaintiffs claim that MindGeek USA's principal place of business is California [#12 at ¶ 25], while the Andreou Declaration states that the entity was formerly headquartered in California and its principal executive office has been in Texas since 2023 [#67-1 at ¶ 7]. Based on these facts, the Court concludes that MindGeek USA is not subject to general jurisdiction in Colorado.

conduct substantial business activities in Colorado" is a conclusion for which Plaintiffs do not provide factual support. [*Id.* at ¶ 76]

Defendants argue that Plaintiffs fail to establish any connection between MindGeek USA's activities and Plaintiffs' alleged injuries. [#67 at 13] The Andreou Declaration states that the "sole function" of Aylo USA Incorporated, the successor entity to MindGeek USA, "has been to distribute DVD-based content and operate e-commerce merchandise stores. Aylo USA Incorporated has not operated, managed, maintained, supervised, or controlled the day-to-day operations of Pornhub." [#67-1 at ¶¶ 3, 7]

The Court finds that Plaintiffs have not met their burden of establishing that MindGeek USA purposefully directed activities relating to the TVPRA injury at Colorado. The assertion that MindGeek USA is within the group of entities that operates Pornhub based on the language of the DPA does not establish that the MindGeek USA entity specifically directed its activities at Colorado. Further, the Andreou Declaration clearly states that MindGeek USA had no role in the operation of Pornhub. [#67-1 at ¶ 7] The Court accepts the well-plead facts in the Complaint as true—as opposed to "mere conclusory allegations"—only to the extent they are uncontroverted by Defendants' affidavits. *Wenz*, 55 F.3d at 1505. Plaintiffs do not offer a competing affidavit or otherwise make a prima facie showing of personal jurisdiction.[8] Thus, the Court cannot exercise personal jurisdiction over MindGeek USA.

---

[8] Plaintiffs state that the Andreou Declaration omits facts about which entity operated Pornhub, executed agreements with GDP, or controlled content moderation and takedowns. [#79 at 5] And they appear to assert that Defendants' affidavit should have included information that amounts to jurisdictional discovery. [#79 at 5 ("Those omissions concern the very contacts and entity functions on which jurisdiction and the claims turn.")] But it is not Defendants' obligations to point Plaintiffs to entities over which this Court may exercise personal jurisdiction. As previously stated, the burden is on Plaintiffs to establish

In their Response, Plaintiffs claim that jurisdictional discovery is warranted as to MindGeek USA because the DPA "expressly includes MindGeek USA within the defined group whose business included maintaining and operating adult websites and states that MindGeek had Los Angeles offices and employees."[9] [#79 at 5] But, Plaintiffs do not allege facts that, if true, show that MindGeek USA directed any activities related to the TVPRA injury at Colorado. Thus, their request for jurisdictional discovery is unwarranted. *Zvelo*, 418 F. Supp. 3d at 671 n.1.

### C. Mastercard International, Inc., Visa, Inc., and Discover Financial Services, Inc.

Defendants Mastercard, Visa, and Discover (the "Credit Card Defendants") argue that this Court lacks personal jurisdiction over them. [##65 at 9-12; 70 at 11-13; 71 at 5-7] The Court addresses these arguments together because Plaintiffs allege similar jurisdictional contacts for each Credit Card Defendant. [#80 at 4-5] As previously mentioned, Plaintiffs do not assert general jurisdiction in Colorado over any of the Credit Card Defendants. [*Id.* at 4] The analysis therefore focuses on specific jurisdiction.

The Complaint alleges that each Credit Card Defendant "allows its products . . . credit cards, to be used throughout the United States, including, but not limited to, Colorado." [#12 at ¶¶ 49, 52, 55] Plaintiffs further allege that this constitutes "sufficient minimum contacts in Colorado." [*Id.* at ¶ 77] In their Response to the Credit Card Defendants' Motions to Dismiss, Plaintiffs argue that they allege specific jurisdiction "from each Card Network's deliberate operation of a payment system in Colorado and the

---

personal jurisdiction. *AST Sports Sci., Inc.*, 514 F.3d at 1056. Plaintiffs need only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss, *id.* at 1056-57, but have not done so here.

[9] The same procedural irregularity noted earlier applies to this request. *See supra* Note 6.

United States and the relationship between that conduct and the paid exploitation alleged here." [#80 at 4] According to Plaintiffs, each Credit Card Defendant "conducts substantial Colorado business and permits its network to be used [in Colorado]," "Pornhub Premium sold paid access through those networks," "Premium included both Plaintiffs' videos," and "each [Credit Card] Defendant benefited." [*Id.*] Plaintiffs explain that the "asserted connection is therefore not residence or internet accessibility alone; it is the alleged operation of the paid-access mechanism in the forum and the resulting continued exploitation." [*Id.* at 5] Plaintiffs also state that the injury "is not limited to the initial filming" and consists of "continuing distribution, monetization, humiliation, harassment, reputational harm, and economic and psychological injury from the videos' ongoing availability." [*Id.* at 3]

As described above, Plaintiffs bear the burden of establishing personal jurisdiction in a tort action by alleging facts that show: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Niemi*, 770 F.3d at 1348. The Court concludes that Plaintiffs have failed to meet their burden of establishing personal jurisdiction for two reasons: Plaintiffs' theory of jurisdiction is not based on actions that are expressly aimed at Colorado, and Plaintiffs do not allege sufficient facts to support their argument that the Credit Card Defendants have contacts in Colorado related to the TVPRA injury.

First, Plaintiffs' theory that the Credit Card Defendants processed payments in Colorado for Pornhub Premium and financially benefitted from this activity is not

jurisdiction specific.[10] Under this theory of personal jurisdiction, the Credit Card Defendants could be sued in any state where they processed payments for Pornhub Premium.[11] As another Court held in a similar scenario:

> [T]o do so would dissolve the barrier between general and specific jurisdiction for many large corporations. And it would weaken our federal system of shared sovereignty. Restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States."

*Banc of Am. Merch. Servs., LLC v. Arby's Rest. Grp., Inc.*, No. 20 CVS 426, 2021 WL 2695455, at *7 (N.C. Super. June 30, 2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). And Plaintiffs' allegation that their injuries "occur[] in Colorado" [#80 at 4] does not change the analysis. *See Walden*, 571 U.S. at 290 (2014) ("The proper question

---

[10] Plaintiffs again ask for jurisdictional discovery. [#80 at 6] In addition to being procedurally improper for the reasons identified above, *see supra* Note 6, Plaintiffs have not explained how information such as Colorado-originating Pornhub transactions; Colorado issuers, acquirers, network revenue, and licenses; the rules, fees, and suspension decisions applicable to Aylo; and the entity responsible for each network would establish that the Credit Card Defendants purposefully directed their activity at Colorado compared to any other place where their network operates.

[11] The Ninth Circuit recently addressed this issue, finding that an internet payment processor purposefully directed its conduct toward California by targeting California consumers in the collection and exploitation of their personal data when processing payments. *Briskin v. Shopify*, 135 F.4th 739, 757-58 (9th Cir. 2025). It held that even though the payment processer operated nationwide, its contacts toward California regarding the alleged data exploitation were its "own choice and not random, isolated, or fortuitous" and thus sufficient for specific personal jurisdiction. *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 359) (second quotation omitted). The Court finds *Briskin* distinguishable, however, because the harm in that case arose from data exploitation installed by the defendant to track the plaintiffs' behavior across the defendant's merchant network. *Id.* at 747-48. Thus, the defendant payment processor purposefully directed its data collection actions at California users causing the harm alleged (violation of the California users data privacy rights). By contrast here, Plaintiffs have alleged nothing beyond the fact that the Credit Card Defendants processed payments.

is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Second, Plaintiffs have failed to establish facts about the Credit Card Defendants' business and operations that establish they have sufficient Colorado contacts related to the TVPRA injury. Plaintiffs broadly allege that the Credit Card Defendants "conduct[] substantial Colorado business," "permit[] [their] networks to be used" in Colorado, and operate a "paid-access mechanism in the forum." [#80 at 4-5] However, these allegations are conclusory because Plaintiffs do not demonstrate *how* the Credit Card Defendants operate their networks in Colorado. The Credit Card Defendants dispute that they have any contacts with Colorado regarding the TVPRA injury. They argue that processing payments for Pornhub Premium subscriptions purchased in Colorado does not involve contact with Colorado because Pornhub is not alleged to be located in Colorado, the credit cards used to make the payments are issued by banks and not the Credit Card Defendants, and the payment networks are electronic and not physically located in Colorado. [##65 at 11; 71 at 7]

In addition, Plaintiffs assert that each of the Credit Card Defendants had "agreements with Aylo to operate as a payment gateway" for users to pay and view content, including Plaintiffs' videos. [#12 at ¶ 96] Plaintiffs do not allege that these agreements were executed in Colorado, intended to govern conduct occurring in Colorado, or related in any way to Colorado. The Credit Card Defendants also dispute this allegation and explain that they enter into contracts with banks, and those banks contract with merchants such as Pornhub to govern transaction processing. [#67-1 at ¶¶ 6-7, 10-12] Plaintiffs did not file a competing affidavit and their allegations lack any

concrete factual basis that the Credit Card Defendants had contacts with Colorado, as opposed to vague assertions that because individuals could purchase Pornhub Premium in Colorado using credit cards, the Credit Card Defendants must have operated in Colorado.

Thus, based on Plaintiffs' jurisdictional allegations, Plaintiffs have failed to make a prima facie showing that Defendants purposefully directed tortious conduct toward Colorado, and the Court lacks specific personal jurisdiction over the Credit Card Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss [##65, 67, 70, 71] and **DISMISSES** Plaintiffs' claims **WITHOUT PREJUDICE.** *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (dismissal for lack of personal jurisdiction should be without prejudice).[12]

---

[12] Pursuant to 28 U.S.C. § 1631, when a court determines that it lacks personal jurisdiction, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action or appeal could have been brought." Although Section 1631 "contain[s] the word 'shall,' [the Tenth Circuit] ha[s] interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo*, 465 F.3d at 1222-23. "Factors considered in deciding whether a transfer is in the interest of justice include [1] whether the claims would be time barred if filed anew in the proper forum, [2] whether the claims alleged are likely to have merit, and [3] whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction." *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). Here, Plaintiffs have neither asked this Court to transfer the matter to another court, identified another district where the action could have been brought, or analyzed the factors that the Court should consider in assessing transfer. The Court declines to raise this issue sua sponte and will therefore dismiss the matter without prejudice.

DATED: November 18, 2026

BY THE COURT:

s/Scott T. Varholak
Chief United States Magistrate Judge